| | | |
|---|---|---|
| TIM AND ANTONIA WEESE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:07-CV-433 |
| | ) | (VARLAN/GUYTON) |
| WYNDHAM VACATION RESORTS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on Motion for Summary Judgment of Wyndham Vacation Resorts, Inc. ("Defendant Wyndham"). [Doc. 18.] Plaintiffs Tim ("Mr. Weese") and Antonia Weese ("Ms. Weese") (hereinafter collectively referred to as "Plaintiffs") have not responded to Defendant Wyndham's motion, and the time for doing so has passed. *See* L.R. 7.1(a), 7.2. Thus, the motion for summary judgment is now ripe for the Court's consideration. The Court has carefully considered the pending motion. For the reasons set forth herein, the Motion for Summary Judgment of Wyndham Vacation Resorts, Inc. [Doc. 18] will be granted.

**I.    RELEVANT BACKGROUND**

In February or March of 2006, Plaintiffs visited Defendant's Smoky Mountain Resort (the "Resort"), located in Sevier County, Tennessee, for a three-day, two-night stay. [Docs. 18-2 at 3; 18-3 at 2.] During their stay, Plaintiffs were allegedly approached by Defendant Wyndham's employee, Sarah Christy ("Ms. Christy"), who was selling vacation timeshares.

[Doc. 18-2 at 4.] According to Plaintiffs, Ms. Christy stated that the Resort would be "building a facility for placement of a day spa." [Doc. 18-2 at 4.] Plaintiffs allegedly expressed interest in opening a day spa at the Resort due to their previous experience in that area of business. [Doc. 18-2 at 4.] Plaintiffs then purchased ownership of a vacation timeshare at the Resort. [Doc. 18-2 at 2, 3.] While signing for the timeshare, Ms. Christy allegedly gave Plaintiffs the names of who to talk to about setting up a business at the Resort after Plaintiffs requested the information. [Doc. 18-2 at 4.]

Plaintiffs then allegedly spoke to Kim Tankersley ("Mr. Tankersley"), the Resort's property manager, about setting up their business, the Grecian Muse Day Spa (the "Grecian Muse"), at the Resort. [Docs. 18-2 at 5; 18-3 at 2.] According to Ms. Weese, Mr. Tankersley hired them after seeing her portfolio, even though she was not licensed, and without seeing her credentials. [Docs. 18-3 at 3; 18-4 at 7.] The parties did not discuss whether Plaintiffs were to be vendors or employees of Defendant Wyndham nor did they finalize the financial terms of the alleged agreement. [Doc. 18-3 at 3.] There was no written agreement between Defendant Wyndham and Plaintiffs, though the length of the alleged agreement involved "years." [Docs. 18-2 at 9; 18-3 at 5.]

In March of 2006, Plaintiffs moved to and stayed at the Resort until February of 2007. [Docs. 18-2 at 5; 18-3 at 4.] During Plaintiffs' stay, Mr. Tankersley allegedly asked Ms. Weese to perform some "make-up" classes in the Resort's activities area and provided her with a training room to conduct the activities from July to December of 2006. [Doc. 18-3 at 3-4.] During this time, Plaintiffs were allegedly waiting for the Resort's facilities building

2

to open and house the Grecian Muse. [Doc. 18-3 at 4.] However, when the Resort's facilities building opened around June of 2007, rooms allegedly for the Grecian Muse were not opened to Plaintiffs and were instead used for storage. [Doc. 18-3 at 5.]

Aside from the alleged business agreement regarding the day spa, Plaintiffs also allege that Defendant Wyndham's Mortgage Department took "double payments" from their banking account. [Doc. 1-1 at 4.] Plaintiffs allegedly authorized Defendant Wyndham to make automatic withdrawals from their account in the amount of $1,063.24. [Doc. 18-1 at 2.] In February of 2007, there was a double withdrawal of $2,156.48 from Plaintiffs' account. [Doc. 18-1 at 2.] According to Defendant Wyndham, the double withdrawal was the result of an accounting error, and it refunded Plaintiffs the amount that should not have been withdrawn once the error was discovered and refunded Plaintiffs the NSF fees charged by their bank. [Doc. 18-1 at 2.] Defendant Wyndham also claims that it waived any fees associated with the prior accidental withdrawal. [Doc. 18-1 at 2.] According to Defendant Wyndham, there has never been any other double withdrawals from Plaintiffs' account. [Doc. 18-1 at 2.] However, Mr. Weese testified that there were "[n]umerous times of double withdrawals," but he could recall when these double withdrawals allegedly occurred nor and have Plaintiffs presented as evidence bank statements or other documentation reflecting multiple double withdrawals. [Doc. 18-2 at 6.]

On October 9, 2007, Plaintiffs filed this action pro se in the Circuit Court of Sevier County. [*See* Doc. 1-1.] Defendant Wyndham then removed this action on the basis of diversity jurisdiction on November 13, 2007. [Doc. 1.] On May 1, 2008, Plaintiffs' counsel

3

filed a Notice of Appearance, so Plaintiffs were no longer acting pro se. [Doc. 10.] Subsequently, Defendant Wyndham filed the pending motion for summary judgment. [Doc. 18.]

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id.* at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the

4

threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

III. ANALYSIS

A. Breach of Contract - Day Spa

In Tennessee, the essential elements of a breach of contract claim "include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). In their complaint, Plaintiffs allege that Defendant Wyndham breached an alleged agreement to perform personal services and open a day spa in the Resort. [Doc. 1-1 at 3.] Defendant Wyndham first contends that summary judgment is appropriate as to this claim because there is insufficient evidence of a meeting of the minds between the parties. Plaintiffs have not responded to this argument.

A contract "must result from a meeting of the minds of the parties in mutual assent to the terms." *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (citations omitted). "[O]ne of the elements essential to the formation of a contract is a manifestation of agreement or mutual assent by the parties to its terms, and the failure of the parties to agree upon or even discuss an essential term of a contract may indicate that the mutual assent required to make or modify a contract is lacking." *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 566 (Tenn. Ct. App. 1990); *see also Seramur v. Life Care Ctrs. of Am., Inc.*, No. E2008-01364-COA-R3-CV, 2009 WL 890885,

5

at *2 (Tenn. Ct. App. Apr. 2, 2009) (citation omitted) ("If an essential element of a contract is found to be indefinite it 'may prevent the creation of an enforceable contract.'"). "A contract must be sufficiently explicit so that a court can determine what are the respective obligations of the parties." *Seramur*, 2009 WL 890885, at *2 (citation omitted).

In this case, the Court agrees with Defendant Wyndham that there is insufficient evidence to raise a genuine issue of material fact as to the parties' meeting of the minds. Though Plaintiffs have testified that Mr. Tankersley stated that they were "hired," there is uncontroverted evidence that the parties did not discuss whether Plaintiffs were to be vendors or employees of Defendant Wyndham. [Doc. 18-3 at 3.] There is also uncontroverted testimony that the parties did not finalize the financial terms of the alleged agreement. [Doc. 18-3 at 3.] The indefinite nature of the relationship between Plaintiffs and Defendant Wyndham as well as the indefinite financial terms, which are essential elements of the alleged contract, demonstrate the lack of mutual assent necessary for an enforceable contract in this case. Without more definite terms, the Court is unable to determine the parties' respective obligations. Thus, the Court will grant summary judgment on this breach of contract claim due to a lack of mutual assent needed for an enforceable contract.

Defendant Wyndham further argues that summary judgment is proper as to this claim due to the statute of frauds. Plaintiffs have not responded to this argument. Tennessee statute provides:

> No action shall be brought: . . . Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract; unless the promise or agreement, upon which such

> action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn. Code Ann. § 29-2-101(a)(5). In this case, the Tennessee statute of frauds is applicable because, as testified by Mr. Weese, the amount of time for the alleged agreement for the day spa involved "years." [Doc. 18-2 at 9.] Because the parties agree that there was no written agreement between Defendant Wyndham and Plaintiffs as to the day spa business, the requirements of Tenn. Code Ann. § 29-2-101(a)(5) have not been satisfied. [*See* Doc. 18-3 at 5.] As a result, the Court agrees with Defendant Wyndham that Tennessee's statute of frauds bars this breach of contract claim and provides an alternative basis for granting summary judgment on this claim.

### B.     Breach of Contract - Double Withdrawal

For this breach of contract claim, Plaintiffs allege that Defendant Wyndham's Mortgage Department "took double payments of an excessive amount over the agreed amount allowed." [Doc. 1-1 at 4.] They allege that "money was taken each month until we closed the account in May." [Doc. 1-1 at 4.] Defendant Wyndham contends that summary judgment should be granted as to this claim because Plaintiffs have not proffered competent proof that any double withdrawals, other than the one for which they were reimbursed by Defendant Wyndham, ever took place.

After reviewing the record, the Court finds that there is insufficient evidence in the record to support this claim. "Upon a defendant's motion for summary judgment, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

7

there must be evidence on which the jury could reasonably find for the plaintiff.'" *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 576 (6th Cir. 2008) (alteration in original) (quoting *Anderson*, 477 U.S. at 252 (1986)). In this case, Plaintiffs have failed to meet this standard. Though Mr. Weese testified about numerous double withdrawals by Defendant Wyndham, he could not recall when they occurred. [Doc. 18-2 at 6.] Despite asserting their existence, Plaintiffs have failed to present to the Court bank records or other supporting documentation demonstrating that more than one already-reimbursed double withdrawal occurred in this case. Though they claim damage to the credit score, Plaintiffs have not identified to the Court specific evidence supporting this allegation. In contrast, Defendant Wyndham has presented evidence that the double withdrawal of Plaintiffs' account occurred only once and that Plaintiffs were refunded this amount as a result of an accounting error. [Doc. 18-1.]

In light of all of this and mindful of the summary judgment standard, the Court finds that there is insufficient evidence to support this claim. The evidence before the Court shows that Plaintiffs were fully reimbursed for Defendant Wyndham's one-time error in February of 2007. [*See* Doc. 18-1 at 2.] Thus, there are no remaining damages to Plaintiffs from this particular incident. Though Plaintiffs testified that the double withdrawals occurred numerous times and that they incurred various damaged from them, such testimony is no more than a "scintilla of evidence" insufficient to support this claim. As a result, the Court agrees with Defendant Wyndham that Plaintiffs have failed to sufficiently establish this breach of contract claim, and summary judgment is appropriate as to this claim.

8

## C. Negligence

Among the allegations regarding the alleged day spa agreement, Plaintiffs also allege that Defendant Wyndham is liable for "[n]egligence by agents using their vicarious power and authority." [Doc. 1-1 at 3.] To establish a prima facie claim of negligence, a plaintiff must establish the following essential elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). In this case, Defendant Wyndham contends that, to the extent negligence claim is being asserted, it must fail because there has been no showing that Defendant Wyndham owed Plaintiffs a tort duty of any kind. Plaintiffs have not responded to this argument.

As an initial matter, the Court questions whether Plaintiffs have asserted a true negligence claim regarding Mr. Tankersley's alleged actions as Defendant Wyndham's agent. Though the complaint includes the term "negligence," the substance of this claim is that Mr. Tankersley did not allow Ms. Weese to work at the Resort despite the alleged day spa agreement. [Doc. 19 at 15.] Notably, the word "negligence" was among Plaintiffs' allegations regarding the day spa breach of contract claim. Thus, it appears that the "negligence" claim is actually one for the breach of the implied covenant of good faith and fair dealing.

In Tennessee, "[p]arties to a contract owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract." *Barnes & Robinson Co. v.*

9

*Onesource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996); *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004)). This implied-in-law covenant has two purposes: (1) it honors the contracting parties' reasonable expectations; and (2) it protects the rights of the parties to receive the benefits of the agreement they entered into. *Barnes & Robinson Co.*, 195 S.W.3d at 642 (citations omitted). Notably, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, but rather "may be an element or circumstance of recognized torts, or breaches of contracts." *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989) (discussing how "good faith, or the lack of it is [not], standing alone, an actionable tort"); *see also Envoy Corp. v. Quintiles Transnat'l Corp.*, No. 3:03cv0539, 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007) (finding that "absent a valid claim for breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing").[1]

As already discussed, Plaintiffs have failed to establish their day spa breach of contract claim against Defendant Wyndham on summary judgment. A claim for the breach of the implied covenant of good faith and fair dealing does not provide an independent basis for relief and is, rather, a potential "element or circumstance of recognized torts, or breaches of contracts." *Solomon*, 774 S.W.2d at 945. In other words, this claim is just "part and

---

[1]Though the district court in *Envoy Corporation* was interpreting North Carolina law, the principles and reasoning are nonetheless persuasive in light of similar reasoning in *Solomon*, 774 S.W.2d 935.

10

parcel" of the breach of contract claim. *Envoy Corp.*, 2007 WL 2173365, at *8. As discussed above, Plaintiffs have failed to establish the existence of an enforceable contract and the claim is barred by the statute of frauds. Thus, to the extent Plaintiffs are actually asserting a claim for the breach of the implied covenant of good faith and fair dealing as an element, they cannot prevail on such a claim. As a result, the Court will grant summary judgment in favor of Defendant Wyndham to the extent their "negligence" claim is actually one for a breach of the implied covenant of good faith and fair dealing based on a breach of contract claim.

To the extent Plaintiffs are actually attempting to assert a negligence claim, summary judgment is still appropriate because Plaintiffs have failed to establish the "duty" element. Tennessee courts have distinguished between actions in contract and those in tort. An action is one in contract and not in tort "[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby." *Green v. Moore*, No. M2000-03035-COA-R3-CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001) (citation omitted). Only "when an act constituting a contractual breach also constitutes a breach of a common law duty independent of the contract" does an action arise in tort and not in contract. *Id.* (citation omitted). For the tort of negligence, the "duty" element refers to the "legal obligation of a defendant to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm." *Giggers*, 277 S.W.3d at 364. "Thus, if an individual 'acts at all, [he or she] must exercise reasonable care to make his [or her] acts safe for others.'" *White v. Bi-Lo, LLC*,

11

No. M2007-02698-COA-R3-CV, 2008 WL 4415781, at *3 (Tenn. Ct. App. Sept. 26, 2008) (alteration in original) (quoting Restatement (Second) of Torts § 4 cmt b).

In this case, the Plaintiffs' allegations regarding Mr. Tankersley, as Defendant Wyndham's agent, and the day spa do not involve the sort of risks of harm or safety associated with the duty element for a negligence claim. Plaintiffs claim that Mr. Tankersley did not allow them to open the Grecian Muse at the resort despite earlier agreeing to let them do so. [*See* Doc. 19 at 15.] Notably, Plaintiffs have not identified a common law duty independent of the contract to establish this element. *Green*, 2001 WL 1660828, at *3. Indeed, Plaintiffs have not responded to nor contested Defendant Wyndham's argument that the duty element is not satisfied in this case. Accordingly, the Court concludes that the prima facie "duty" element is lacking, and summary judgment will be granted to the extent Plaintiffs may be asserting a negligence claim regarding Mr. Tankersley's actions and the day spa.

### D. Fraudulent Inducement

In their pro se complaint, Plaintiffs also allege that Defendant Wyndham is liable for making "[m]isleading promises of amenities and work to Plaintiffs . . . in order to buy [the timeshare] property." [Doc. 1-1 at 4.] Thus, it appears that Plaintiffs are asserting an action for fraudulent inducement to contract claims. The elements of this claim are: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard of the truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; and (5)

an injury resulting from the reliance. *Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000). In this case, Defendant Wyndham contends that summary judgment is proper because Plaintiffs cannot establish certain essential elements for this claim.

To the extent Plaintiffs rely on alleged representations or statements by Mr. Tankersley, Defendant Wyndham argues that Plaintiffs cannot establish reliance on his alleged statements because they had already entered into the timeshare agreement prior to meeting with him. Even when construing their deposition testimony in a light most favorable to Plaintiffs, the Court agrees with Defendant Wyndham. Ms. Weese testified that she signed the timeshare agreement before she spoke to Mr. Tankersley about the day spa business. [Doc. 18-4 at 6.] Thus, Plaintiffs could not have relied on the alleged misrepresentations by Mr. Tankersley because they had already agreed to buy a Resort timeshare before ever meeting him. As a result, Plaintiffs cannot establish the reliance element of their fraudulent inducement to contract claim.

To the extent Plaintiffs rely on the alleged representations or statements by other employees that occurred before Plaintiffs agreed to buy the timeshare, Defendant Wyndham argues the "knowledge" element is lacking due to Ms. Weese's deposition testimony that she did not know whether Ms. Christy knew the statements about a day spa opening at the Resort was false. While Defendant Wyndham asserted this argument in support of its summary judgment motions, Plaintiffs have not identified to the Court specific evidence that goes toward the "knowledge" element. To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which

13

a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. Notably, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . . Rule 56 allocates that duty to the opponent to the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007) (omission in original) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 n.7 (5th Cir. 1992)). In this case, Plaintiffs have not identified the necessary evidence, nor even opposed Defendant Wyndham's argument as to this claim. Thus, summary judgment is proper as to Plaintiffs' fraudulent inducement claim.

## F.     **Intentional Infliction of Emotional Distress**

In their complaint, Plaintiffs include allegations of "stress" and "grief" resulting from Defendant Wyndham's double withdrawal from their banking account. Defendant Wyndham has interpreted this as a potential claim for intentional infliction of emotional distress. Because Plaintiffs have not otherwise contradicted Defendant Wyndham's interpretation through a responsive brief, the Court likewise will interpret this claim as one for intentional infliction of emotional distress in light of the allegations of "malicious intent" in Plaintiffs' complaint.

The elements for an intentional infliction of emotional distress claim are: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. *Oates v. Chattanooga Publ'g Co.*, 205 S.W.3d 418, 428 (Tenn. Ct.

14

App. 2006). Defendant Wyndham contends that Plaintiffs cannot show that the conduct alleged was sufficiently "outrageous" to survive summary judgment. Tennessee courts have adopted the following definition of outrageous conduct:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004) (citing *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997)).

After careful consideration, the Court agrees with Defendant Wyndham that the double withdrawal, as a matter of law, does not rise to the level of outrageous conduct necessary to maintain an intentional infliction of emotional distress claim. As previously discussed, the evidence shows that the double withdrawal were the result of an accounting error and that Plaintiffs were fully reimbursed for the error. [Doc. 18-1.] The Court cannot say that the this conduct is so extreme in degree or outrageous in character as is necessary to sustain this claim. As a result, the Court will grant summary judgment to the extent Plaintiffs assert an intentional infliction of emotional distress claim.

15

### G. Damages

In their motion for summary judgment, Defendant Wyndham contends that the damages claimed are too speculative to recover under Tennessee law. The purpose of damages is "to compensate the wronged party for damage or injury caused by the defendant's conduct." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). In this case, for the reasons already discussed, summary judgment will be granted on all of Plaintiffs' claims. Thus, it is unnecessary for the Court to address Defendant Wyndham's speculative damages argument as there are no remaining claims for which damages may be awarded.

### IV. CONCLUSION

For the reasons set forth herein, the Motion for Summary Judgment of Wyndham Vacation Resorts, Inc. ("Defendant Wyndham") [Doc. 18] will be **GRANTED**, whereby Plaintiffs Tim and Antonia Weese's claims will be **DISMISSED with prejudice.**

ORDER ACCORDINGLY.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE